IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAFFI HOVAGIMIAN and** : <br> **1209 FRANKLIN LLC** : <br> : <br> **v.** : <br> : <br> **HOME EXCHANGE NJ LLC and** : <br> **RAMIZ DUKA** : | **CIVIL ACTION** <br> **No. 23-4297** |

**McHUGH, J.**                                                                                                                         **December 18, 2024**

## MEMORANDUM

This suit arises out of a construction contract gone awry. Plaintiffs Raffi Hovagimian and 1209 Franklin LLC allege that they paid Defendants Home Exchange NJ LLC and Ramiz Duka over $300,000 to renovate a property, but that Defendants' work was structurally unsound, rendering the renovation worthless and in breach of contract. Since the onset of this action, Defendants have repeatedly obstructed litigation by failing to comply with deadlines, discovery requests, and court orders. Plaintiffs now seek sanctions against Defendants in the form of default judgment and attorney's fees. For the reasons that follow, I will grant the motion and enter a judgment in favor of Plaintiffs.

**I.   Facts as Pled**

Raffi Hovagimian is the sole member of 1209 Franklin LLC, which owns a building located at 1209 N. Franklin Street in Philadelphia ("Property"). Compl. ¶¶ 5, 12, ECF 1. In August 2020, Plaintiffs signed a contract with Ramiz Duka and Home Exchange NJ LLC for the renovation of the Property.[1] Compl. Ex. A, ECF 1-3. Pursuant to this agreement, Home Exchange NJ LLC

---

[1] Home Exchange NJ LLC is a limited liability company whose sole member is Ramiz Duka. Compl. ¶ 8.

would perform extensive work, including framing all four floors of the house, electrical wiring, and plumbing.  *Id*.  In exchange, Plaintiffs would pay an amount between $295,000 and $320,000, with an initial $100,000 deposit.  *Id*.

In Spring 2023, after multiple years of work and delays, the renovated Property severely failed multiple inspections performed by the City of Philadelphia.  *Id*. ¶¶ 23-26.  At the advice of the inspectors, Plaintiffs hired an engineering firm to inspect the Property and create a Structural Report.  *Id*. ¶¶ 26-27.  The engineer identified over twenty significant issues, primarily relating to Defendants' substandard work.  Structural Report 2-3, ECF 1-6.  The Report concluded that "the structural condition of the building is inadequate. The number of structural issues is excessive therefore it is recommended to do a full demolition of the building to rebuild."  *Id*. at 3.  Following the Report, Plaintiffs fired Defendants and engaged a new contractor to redo the project.  Compl. ¶ 29.  By then, Plaintiffs had paid Defendants $270,000 for labor and $83,077 for materials.  *Id*. ¶ 30.

In November 2023, Plaintiffs filed suit against Defendants, alleging breach of contract, unjust enrichment, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  Defendants failed to file a timely answer and default was entered against them, then vacated.  ECF 8; ECF 15.  Throughout the discovery period, Defendants have failed to respond to interrogatories or requests to produce documents, directly violating this Court's orders.  On November 15, 2024, Plaintiffs filed a Motion for Default Judgment.  Pls.'s Mot. Default J., ECF 28.  Defendants then filed an untimely response in opposition.  *See* Defs. Resp., ECF 29; E.D. Pa. Local R. Civ. P. 7.1(c).

## II. Legal Standard

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). These court orders include "rendering a default judgment against the disobedient party." *Id.* 37(b)(2)(A)(vi).

The decision to enter a Rule 55 default judgment as a sanction for failing to participate in litigation is governed by the *Poulis* factors. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) (*Poulis* factors are the proper standard for considering punitive dismissals); *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984) (listing six factors for determining whether the district court "abused its discretion in dismissing, or refusing to lift a default"). These six factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis*, 747 F.2d at 868. To issue a default judgment, I must "make explicit factual findings concerning these factors," but "it is not necessary that all of these factors point toward a default before that sanction will be upheld." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 919 (3d Cir. 1992).

## III. Discussion

### A. Default Judgment

Plaintiffs ask me to enter judgment against Defendants as a sanction for their willful failure to comply with this Court's orders and provide discovery in good faith. Pls.'s Mot. Default J., ECF 28; Fed. R. Civ. P. 37(b)(2)(A)(vi); *id.* 55(b)(2). Plaintiffs contend that Defendants have

3

"refus[ed] to engage in any meaningful discovery in this case" and have engaged in "obstructive behavior" that "began as early as the pleadings stage." Pls.'s Mem. at 1-2, ECF 28-1.

I agree and provide a summary of Defendants' obstructive behavior throughout this litigation. This behavior started soon after the Complaint was filed. Service of Defendants was effectuated on November 12, 2023, and their answers were due December 4. ECF 5; ECF 6; Fed. R. Civ. P. 12(a)(1)(A)(i). Defense counsel requested an extension until December 28, which Plaintiffs' counsel agreed to under the condition that Defense counsel "prepare and file any documents needed for an extension." ECF 7-3 at 2. No such stipulations or notices were filed with the Court. Defendants failed to file anything by the December 28 deadline, resulting in a default against them on December 29. ECF 8. A timely motion to vacate the default was filed, and I granted relief, believing that the entry of a default one day past the deadline was a snap default that should not be condoned, and taking at face value Defense counsel's representations that there were valid defenses and counterclaims. ECF 15.

At the Rule 16 conference, it became clear that Defendants did not merit the accommodation granted by the Court. The scheduling order specified that "parties are expected to have identified and **produced** documents falling within the definition of initial disclosures under R26(a)(1) in advance of the Conference with sufficient time for opposing counsel to review them and prepare to address them." ECF 17 at 3 (emphasis in original). Defendants did not produce *any* initial disclosures in advance of the Rule 16 Conference. *See* ECF 21. Plaintiffs produced violation notices from City of Philadelphia Inspectors showing serious non-compliance. ECF 21-1. Those same inspectors recommended that a structural engineer be consulted, and his report was damning and meticulously supported by detailed photographs showing numerous deficits. *Id.* at 10. The report identified several issues that called into question the soundness of the structure,

4

such as floor joists not inserted a sufficient distance into foundation falls, joists supported only by fasteners – not hangers, and doorways missing lintels. At the Conference, Defense counsel did not dispute that substantial funds had been tendered to his clients, weakly asserted the pandemic as an excuse for non-completion of the work, had no substantive response to the structural deficits and non-compliance with applicable codes, and could offer no credible factual basis for the counterclaims asserted.

Concerned by the apparent lack of merit in Defendants' position, in addition to entering a general post-Conference case management order, I also issued a second order requiring Defendants to produce a specific list of information and documents related to insurance carriers within 14 days, and to "supply full and complete responses to Plaintiff's discovery requests" in strict compliance with the timeframe mandated by the Rules of Civil Procedure. ECF 24. A third order required Defendants to file an amended answer within 21 days, limiting their affirmative defenses to ones that could be asserted in good faith. ECF 25.

Despite the specificity of these orders and Plaintiffs' unrelenting discovery efforts, Defendants have continued to obstruct discovery. Defendants have not yet provided most of the required information about their insurance carrier, even though the Court ordered them to do so by August 1st. ECF 24. In their Response to this Motion, Defendants claim that on August 22, 2024,[2] they sent "Plaintiffs a copy of the applicable insurance policy, which was the subject of the

---

[2] Based on the record, the Court is doubtful that this actually occurred on August 22nd. On August 27th, Defense counsel sent an email to Plaintiffs' counsel saying "**Insurance:** . . . I await an official denial in writing, if there was one." ECF 28-5 at 4. Thus, as of August 27th, it appears that Defense counsel did not have the coverage denial letter.

coverage denial. See Exhibit B." Defs. Mem. at 3, ECF 29-1.[3] But their attached Exhibit B only contains a coverage denial letter and no other insurance documents. ECF 29-4. On August 26th, Plaintiffs provided Defendant with the name and policy number of one insurance policy and claimed they sent the Complaint to that insurer, but did not provide any actual documents or names of representatives. *See* Amended Interrogatory Response at 2, ECF 28-7. Thus, not only did Defendants provide the insurance coverage denial and policy number over three weeks late, but **to date** they also failed "to produce all potentially relevant policies, to identify any representatives of insurance carriers with whom Defendants have communicated about these claims, and to produce all documents, including emails, pertaining to such communications," as ordered by the Court.[4] ECF 24.

Similarly, Defendants failed to respond to Plaintiffs' first set of discovery demands by the mandated July 25th deadline. ECF 20; ECF 24; *see* Fed. R. Civ. P. 33(b)(2); *id.* 34(b)(2)(A). Defendants did not communicate with the Court or Plaintiffs' counsel as to the reason for this delay. To obtain any discovery responses, Plaintiffs' counsel was forced to follow up multiple times with Defense counsel. *See* ECF 28-5. After failing to respond to Plaintiffs' counsel, Defense counsel finally responded on August 2nd to request a 15-day extension. *Id.* at 10. Plaintiffs'

---

[3] As Defendants have not included page numbers in their memorandum, the Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Defendants were well aware of these issues. Plaintiffs' counsel repeatedly emailed Defense counsel identifying insurance discovery issues. Plaintiffs' counsel asked multiple times for: "**Insurance**: We want all correspondences regarding your client's purported attempt to get this covered. This is what was discussed with the judge. We want the policy as well." ECF 28-5 at 2-3; *see also* ECF 29-6 at 4 (Plaintiffs' counsel asking for all insurance documents on September 11, 2024, and saying to Defense counsel "You sent *one* denial – and it was for the wrong policy. Plus, as I previously stated, we want 1) all correspondences regarding your client's purported attempt to get this covered and 2) the policy (any policy that your client believes applies to this work).").

counsel agreed to an extension until August 8th. *Id.* Yet Defendants didn't file responses until August 13th, and the responses Defendants provided failed to comply with this Court's order, did not respond to document demands, lacked the required insurance information, and were deficient in numerous other respects.[5] *See* ECF 28-6. Plaintiffs' counsel has been in repeated contact with Defense counsel regarding these deficiencies, but Defendants have yet to share the required discovery materials. *See* ECF 28-5.

Further, instead of filing an Amended Answer on August 8, 2024 as ordered, ECF 25, Defendants filed an Amended Answer on September 4th. ECF 26. Defendants did not request an extension or provide the Court with any notice or explanation of this delay. Defendants only filed this Amended Answer after Plaintiffs' counsel sent three emails notifying Defendants that it was overdue. *See* ECF 28-8 at 12, 15, 16.

After the Amended Answer was finally filed, Plaintiffs filed a Second Set of Discovery Demands on September 5th, seeking information related to Defendants' purported counterclaims and affirmative defenses. ECF 28-9. Over the following two months, Plaintiffs' counsel repeatedly emailed Defense counsel about these requests. Defendants did not respond with answers until December 6th, over a month late. ECF 29-7. Their response was barebones, lacked

---

[5] For example, Request No. 8 sought a "detailed description of all costs incurred or payments made by you Related to the Project, including but not limited to: . . . (b) Payments made for any materials or supplies (including dates, amounts, methods of payment)." ECF 28-4 at 12. Defendants' complete response in both their original and amended response was: "Yes. Some paid by Plaintiffs also." First Interrogatory Response at 2, ECF 28-6; *see also* Amended First Interrogatory Response at 3, ECF 28-7 (dated August 26th, containing a previously missing verification). Defendants' response to every other interrogatory was similarly unresponsive, undetailed, and wholly inadequate. Additionally, Defendants' response to the first set of interrogatories also stated multiple times "to be supplemented," "to be gathered," or "to be determined," First Interrogatory Response at 2, ECF 28-6, but their Amended Interrogatory Response only included minor changes and did not supplement most answers.

most relevant facts that were requested, is contradicted in part by the record,[6] was often nonresponsive to the interrogatories, and had numbering issues that make it difficult to connect each answer to the correct interrogatory. *Id*.

Defendants provide three justifications for their egregious discovery delays. First, they state that Home Exchange NJ LLC's secretary, Duka's daughter, was "away on vacation" abroad. Defs. Mem. at 3. Second, they claim that Defendant Duka "could not retrieve some pertinent documents related to this matter," implying he had difficulty because he is "elderly." *Id.* at 5. Third, Defendants cite to criminal charges that Defendant Duka faced. *Id.* at 4. However, in light of the facts of this case, I find that none of these justifications constitute good cause for Defendants failure to comply with discovery, particularly when the Court made clear at the Rule 16 Conference that delay would not be countenanced. The discovery delinquencies have lasted from July to present day, making the secretary's vacation – already a poor excuse – an unacceptable justification.[7] Further, Duka is in his early 60s, but there is no indication that he is incapacitated in any way that alters his legal duties to keep business records and comply with discovery. Lastly, while Duka has been facing criminal charges during discovery, he has been out on bail since May

---

[6] For example, in Defendants' answer to Interrogatory No. 12, they state that "Defendants has [sic] not communicated with any third party after the lawsuit was filed." ECF 29-7 at 3. However, Defendants have submitted to this Court an insurance denial letter that proves that Defendants have communicated with third parties about the case after the lawsuit was filed. Insurance Denial Letter, ECF 29-4. Further, the actual Interrogatory 12 requested third party communications "either before or after this lawsuit was filed" along with other relevant information, such as the date, format, attendees, and subject matter of any such communication.

[7] *See, e.g., Davis v. Twp. of Paulsboro,* No. 02-3659, 2005 WL 8174847, at *6 (D.N.J. Oct. 17, 2005) (Plaintiff's counsel's vacation and trial schedule does not constitute good cause for extending the scheduling order deadline); *Martin v. Cooper Plumbing & Heating, Inc.*, 145 F.R.D. 372, 374 (E.D. Pa. 1992) (finding that vacation schedules of defendants were "clearly foreseeable" and therefore did not justify an extension of discovery).

15, 2023 and is not currently incarcerated, despite his conviction for conspiracy to commit arson related to Duka's hiring of two men to burn down a warehouse. *See United States v. Duka*, 23-cr-196, ECF 96; *id.* ECF 97.[8]  Under Duka's conditions of bail, he can travel freely in New Jersey and the Eastern District of Pennsylvania, use internet and electronic devices, and no other bail condition restricts his ability to fully participate in discovery. *Id*. at ECF 21.  The trial in his criminal case began on October 24, 2024 and lasted through October 30th, so many of the discovery issues predated the trial by months. *See id*. at ECF 85, ECF 95.  Therefore, though the criminal matter no doubt consumed much of Duka's time, it does not justify his total disregard for discovery deadlines and this Court's orders.  Further, not once have Defendants moved for an extension.

In sum, Defendants have repeatedly obstructed and impeded Plaintiffs' legitimate discovery requests.  And their post-hoc justifications do not constitute good cause for their failure to comply with discovery requests or this Court's orders. *See Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1306 n.9 (3d Cir. 1995) (good cause is "a discretionary judgment to be exercised by the district court" and is governed by an abuse of discretion standard).  Where Defendants have repeatedly failed to respond to discovery or comply with this Court's orders, entry of default judgment is an appropriate sanction as guided by the *Poulis* factors. *See Poulis*, 747 F.2d at 868.  Such a remedy is particularly appropriate where the Court previously vacated a default, and

---

[8] I may take notice of the docket in another case and of documents within that docket to "determine what statements they contained." *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Rankin v. Majikes*, No. 14-699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014).

Defendants' representations that they had a meritorious defense have proven completely unfounded.

### 1. *The extent of the party's personal responsibility.*

The first *Poulis* factor is the extent of the party's personal responsibility. Though only Defense counsel can attest to the communications between him and his clients, Defense counsel appears to have been in repeated contact with Duka and another Home Exchange NJ LLC staff member, attempting to procure discovery material from them. *See, e.g.,* ECF 28-8 at 3, 4, 12. Therefore, this is not the case of an unknowing client being abandoned by its attorney. The discovery materials at issue should be in Defendants' possession, and – had Defendants complied and provided the requested materials to their attorney – I am persuaded that Defense counsel would have provided discovery to Plaintiffs. Further, Defendants' remarkably inadequate responses to the first set of interrogatories were written from the first-person perspective and verified by Duka, indicating that he is personally responsible for the deficient responses filed on behalf of both Duka and Home Exchange NJ LLC.[9] ECF 28-7. And it bears mention that this is not a complicated case – all the discovery requested is elementary. I am therefore convinced that both Defendants have some degree of personal responsibility for the obstruction of discovery.[10]

---

[9] *See, e.g.,* ECF 28-7 at ¶ 2 ("I cannot remember their names at this time"); *id.* ¶ 6 ("I was only a consultant"); *id.* ¶ 9 ("Once project failed inspection, Plaintiff fired me").

[10] Defense counsel claims that this factor weighs against sanctions because Home Exchange NJ LLC's secretary was on vacation, Duka had difficulty getting the documents because of his age, and Duka was preoccupied with pending criminal matters. *See* ECF 29-1. However, these facts add credence to my conclusion that Defendants – and not their counsel or an external third party – are personally responsible for their failure to comply with discovery.

10

*2. Prejudice to the adversary.*

Second, Defendants' failure to participate in this litigation has severely prejudiced Plaintiffs, who have been unable to obtain crucial evidence regarding their claims or Defendants' counterclaims, including information about insurance coverage, as specifically ordered by this Court, and specific individuals who may have relevant information. And the delays sought by the Defendants at the inception of the case were specifically for the purpose of determining any applicable insurance. "'Prejudice' for the purpose of *Poulis* analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

Discovery materials that Defendants have failed to provide include the names and contact information of insurers and possible subcontractors, preventing Plaintiffs from speaking with relevant witnesses within the discovery period. These witnesses who Plaintiffs may have to rely on will "inevitably have dimmed memories from the delay." *Hildebrand v. Allegheny County*, 923 F.2d 128, 134 (3d Cir. 2019). Further, Plaintiffs have been forced to spend resources repeatedly contacting Defense counsel to try to obtain relevant discovery. Therefore, this factor bears substantial weight in favor of default judgment. *See Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984) ("true prejudice" to a party, such as "the inevitable dimming of witnesses' memories" "bear[s] substantial weight in support of a dismissal or default judgment").

*3. History of dilatoriness.*

Third, Defendants have repeatedly ignored deadlines, discovery requests, and court orders from the onset of litigation. Though "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008)

(citations omitted), "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. of N.J. Brewery Emps' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). The record shows an extensive history of repeated delay and delinquency, making this factor weigh towards sanctions.

                4. *Whether the conduct was willful or in bad faith.*

Fourth, Defendants' conduct can be considered willful or in bad faith. "Where a party's conduct lacks a 'reasonable excuse,' courts consider the conduct willful." *Garcia v. S&F Logistics*, 2022 WL 14228982, at *5 (E.D. Pa. Oct. 24, 2022) (Gallagher, J.) (citing *Ramada Worldwide, Inc. v. Anita Nguyen, LLC*, No. 11-921, 2012 U.S. Dist. LEXIS 53855 at *9 (D.N.J. Jan. 10, 2012). Here, the record demonstrates that Defendants actions are "not merely negligent or inadvertent," but are willful. *See Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002) (affirming the District Court's finding that Plaintiff's failure to comply with orders was willful). The Court clearly laid out detailed discovery deadlines in distinct orders. Plaintiffs repeatedly communicated with Defense counsel regarding these deadlines. Despite this, Defendants to this day have failed to adequately respond to *any* discovery request or order. Further, as outlined above, Defendants' explanation of these delays – Duka's daughter's international vacation, Duka's difficulty retrieving documents, and Duka's criminal proceedings – cannot justify Defendants' large number of discovery issues and *continued* failure to obey court orders to this date. Overall, the record clearly shows that Defendants' year-long pattern of unjustifiable dilatory behavior goes beyond mere negligence and into intentional behavior. Therefore, this factor weighs towards default judgment.

5. *Alternative sanctions.*

Fifth, alternative sanctions would not be effective. Defendants have flagrantly disregarded this Court's prior orders and Plaintiffs' continuous entreaties for adequate and timely responses. Further, Defendants have previously been subject to default for failing to answer. Though I ultimately vacated this original default, the prior imposition of default has failed to deter Defendants' obstructive and dilatory behavior. Instead, Defendants have continued to disregard their responsibilities, preventing Plaintiffs from accessing information needed to prove their claims, while having the audacity to argue that their responses have been adequate and not unduly delayed. Defs. Mem. at 5. Further, Defense counsel claims that "Defendants have made efforts to comply and have communicated reasonably with Plaintiffs regarding the discovery demands," ECF 29-1 at 6, despite clear record evidence that their communication and discovery efforts have been wholly deficient and objectively unreasonable. In light of the above considerations, I do not believe that Defendants will change their conduct moving forward were I only to impose attorney's fees, compel discovery responses, or impose any other form of sanction. Thus, I find that the most effective sanction is to preclude Defendants from contesting liability or pursuing counterclaims. Default judgment is appropriate and necessary.

6. *The meritoriousness of the claim.*

Finally, with respect to the sixth factor, Plaintiffs also have a meritorious claim as defined by the *Poulis* Court: "the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F.2d at 870. Such is the case here. Plaintiffs allege they had a contract with Defendant Home Exchange NJ LLC for the renovation of the Property, but that Home Exchange NJ LLC failed to perform and was unjustly enriched. Plaintiffs also bring a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law against both Defendants,

13

claiming that, among other things, they "[r]epresented that the goods or services were of a particular standard, quality or grade when they are of another" and "[e]ngaged in fraudulent and/or deceptive conduct creating the likelihood of confusion or misunderstanding."[11]  Compl. ¶ 55. These claims are well-supported by the pleadings.  Plaintiffs allege that – after paying Duka over $350,000 for three years of work renovating the property – multiple City of Philadelphia inspectors found significant deficiencies, including that the fire rated insulation was "sloppy" and could not pass inspection and the electrical work so subpar the supervisor inspector concluded that a previous inspector must have "been paid off."  Compl. ¶¶ 22-26.[12]  As discussed above, at the advice of the City's building inspectors, Plaintiffs hired a third-party engineering firm to inspect the condition of the renovated Property and make detailed recommendations.  The resulting Structural Report identified over twenty significant issues, found that "the structural condition of the building is inadequate," and based on the number and severity of issues recommended that the best course of action was "a full demolition of the building to rebuild."  Structural Report 2-3, ECF 1-6.  The findings and conclusions of that report were amply supported by photographs.  Viewing the pleadings in the light most favorable to Plaintiffs, their claims easily surpass the Rule 12(b)(6) motion to dismiss standard and are therefore meritorious.

---

[11] The UTPCPL applies to both LLCs and natural persons such as Duka.  If Plaintiffs' allegations were proven at trial, Duka and Home Exchange NJ LLC would be found jointly and severally liable under the UTPCPL.  *See* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq*; *Sereda v. Ctr. City Acquisitions, LLC*, 222 A.3d 1161, 1168-73 (Pa. Super. 2019) (affirming that an individual defendant was jointly and severally liable under the UTPCPL for an LLC's actions in a construction contract case under the participation theory).  Therefore, Plaintiffs have also stated a meritorious claim against Duka.

[12] The City's Reports from these inspections are attached to the Report of the Rule 26(f) Meeting submitted to this Court, and verify that the inspections failed due to numerous issues related to the renovation of the Property.  *See* ECF 21-1.  The Property's deficiencies go beyond what is listed in the inspection reports: an inspector specifically states that the problems are so numerous "I cannot list everything."  *Id.* at 5.

"Where a plaintiff makes out a prima facie case, but the defendant raises a prima facie defense, the factor may not weigh in favor of the plaintiff." *Adams*, 29 F.3d at 876-77. Defendants raise six affirmative defenses: (1) that the damages alleged are incorrect; (2) that Plaintiffs' conduct constituted a waiver; (3) that Plaintiffs' failed to join an indispensable party; (4) that the claims are barred by *force majeure* because Covid-19 caused the construction delays;[13] (5) that Plaintiffs were unjustly enriched and therefore their Complaint is "barred by an offset"; and (6) that Plaintiffs failed to mitigate damages. Amended Answer ¶¶ 62-68. However, Defendants have failed to make a prima facie case for any of these defenses, as they have failed to provide any factual allegations or details beyond these legal conclusions. For example, Defendants did not indicate what Plaintiffs did that constituted a waiver and which indispensable party was not joined. This inadequate pleading is particularly noteworthy given that this Court specifically ordered Defendants to ensure all defenses could be asserted under the facts of this case. *See* ECF 25.

Defendants additionally raise two counterclaims: (1) that Plaintiffs unilaterally breached the contract and thereby harmed Defendants; and (2) that Plaintiffs were unjustly enriched by "retaining and accepting the work performed by Answering Defendants without full compensation." Amended Answer ¶¶ 69-78. To determine whether the counterclaims are meritorious, I evaluate them under the same motion to dismiss standard as the underlying claim. *See, e.g., Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011). Here, Defendants have failed to meet the well-established 12(b)(6) standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Amended Answer makes conclusory and bare-boned

---

[13] The basis of the Complaint is not that the project was delayed, but that the work was faulty. Because no claims are based on project delays, this affirmative defense is extraneous.

allegations and fails to set out "sufficient factual matter to show that the [counter]claim is facially plausible." *Id*. (internal citations omitted). Therefore, the counterclaims are not meritorious as pled.

When considering all claims, defenses, and counterclaims, the sixth *Poulis* factor thus weighs towards default judgment.

Default judgment is a drastic sanction that "should be reserved for those cases where there is a clear record of delay or contumacious conduct." *Poulis*, 747 F.2d at 866. However, in light of Defendants' incessant obstructive behavior, it is clear that this extreme and disfavored sanction is nonetheless warranted. Though "not all of the *Poulis* factors need be satisfied" to enter default, *Mindek*, 964 F.2d at 1373, here all six factors weigh in favor of entering default judgment against Defendants. As previous orders and a prior default judgment have shown no impact, I determine that other sanctions, such as an order to compel, would not be an adequate alternative sanction in this case. Therefore, the Court provides the default judgment that Plaintiffs seek and will dismiss Defendants' counterclaims.

### B. Damages

"A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983)). "If the damages are not for a 'sum certain or for a sum which can be computation be made certain,' Fed. R. Civ. P. 55(b)(1), the 'court may conduct such hearings or order such references as it deems necessary and proper.' Fed. R. Civ. P. 55(b)(2)." *Id.* (internal citations omitted).

16

Though I have a duty to inquire into the amount sought by Plaintiffs, a Court is not required to conduct an evidentiary hearing "as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citation and quotations omitted), such as when "detailed affidavits and documentary evidence" are submitted to support the plaintiff's claim for damages, *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2–3 (D.N.J. July 17, 2013) (citation omitted).  In fact, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  *Pope v. United States*, 323 U.S. 1, 12 (1944).  In a construction contract case such as this, a hearing is unnecessary to determine damages with a reasonable certainty.  Instead, parties shall submit briefing and documentation to establish certain damages.  Plaintiffs must submit damages evidence, such as sworn affidavits, payment records, and subsequent contractor quotes.

### C. Attorney's Fees

Plaintiffs also seek reasonable expenses, including attorney's fees, for their expenses connected to filing their Motion for Default Judgment.  "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders" including "rendering a default judgment."  Fed. R. Civ. P. 37(b)(2)(A)(vi).  And "in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *Id.* 37(b)(2)(B).

Here, Defendants have not shown good cause to justify their months-long – and continuing – failure to comply with discovery requirements and court orders. As outlined above, their obstruction of discovery has been severe and ongoing. The entry of default judgment does not remedy the time and resources that Plaintiffs have been forced to expend as a result of Defendants' misconduct. Therefore, Defendants shall pay for Plaintiffs' reasonable expenses connected with their preparation and filing of their Motion for Default Judgment. ECF 28.

## IV.  Conclusion

For the reasons set forth above, Plaintiffs' Motion for Default Judgment will be granted. An appropriate order follows.

       /s/ Gerald Austin McHugh
United States District Judge