IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFFI HOVAGIMIAN and : | |
| 1209 FRANKLIN LLC : | |
| : | CIVIL ACTION |
| v. : | No. 23-4297 |
| : | |
| HOME EXCHANGE NJ LLC and : | |
| RAMIZ DUKA : | |

**McHUGH, J.**                                                                                               February 18, 2025

**MEMORANDUM**

This memorandum addresses the appropriate measure of damages following the entry of a default judgment against Defendants. Based on the evidence submitted, Plaintiffs are entitled to an award of $527,365.24 together with post-judgment interest.

**I.    Relevant Background**[1]

This suit arises out of the deficient performance of a building renovation contract. In November 2023, Plaintiffs Raffi Hovagimian and 1209 Franklin LLC brought an Unfair Trade Practices and Consumer Protection Law (UTPCPL) and breach of contract suit, alleging that they paid Defendants over $350,000 to renovate a property, but that Defendants' work was worthless. During the pleading and discovery phase of litigation, Defendants repeatedly obstructed litigation by failing to comply with deadlines, discovery requests, and court orders, and it became clear there was no defense on the merits. I granted a default judgment for Plaintiffs on all claims and litigation costs associated with the preparation of Plaintiffs' Motion for Default Judgment. ECF 31.

---

[1] A comprehensive background of this case and the underlying allegations are set forth in my prior memorandum granting default judgment. ECF 30.

Plaintiffs seek $3,542,074.77 as well as pre- and post-judgment interest. Defendants' response was untimely, but will nonetheless be considered by the Court.

## II. Standard of Review

"A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). To calculate damages, a court is not required to conduct an evidentiary hearing "as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (cleaned up), such as when "detailed affidavits and documentary evidence" are submitted to support the plaintiff's claim for damages, *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2-3 (D.N.J. July 17, 2013) (citation omitted). In fact, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944).

Under Pennsylvania law, a reasonable calculation of damages can be made by looking at the evidence and affidavits submitted by the moving party. *See, e.g., Kaczkowski v. Bolubasz*, 421 A.2d 1027 (Pa. 1980); *J & J Sports Prods. v. Roach*, 2008 U.S. Dist. LEXIS 109055 (E.D. Pa. July 8, 2008). In Pennsylvania, the "law does not require that proof in support of claims for damages or in support of compensation must conform to the standard of mathematical exactness." *Lach v. Fleth*, 64 A.2d 821, 827 (Pa. 1949). Instead, "[a]ll that the law requires is that a claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough."

2

*Kaczkowski*, 421 A.2d at 1030 (cleaned up). "If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation." *Id.* (internal citations omitted).

### III. Discussion

Plaintiffs seek compensatory damages under both the UTPCPL and for breach of contract, as well as statutory remedies conferred by the UTPCPL.

#### A. Damages are Not Available for Plaintiffs Under the UTPCPL

Judgment was entered under the UTPCPL based on the allegation in the complaint that Plaintiffs "are consumers who contracted with Defendants to purchase goods for their personal purposes." Compl. ¶ 54, ECF 1. The UTPCPL allows "[a] person who purchases or leases goods or services primarily for *personal, family or household purposes*" to bring private actions. 73 P.S. § 201-9.2(a) (emphasis added). In contrast to the allegations in the Complaint, the evidence submitted in support of damages has revealed that Plaintiffs are using the property for investment purposes. Specifically, Plaintiffs have submitted leases for all three units in the renovated property, demonstrating that they are currently rented out, with Plaintiffs receiving rental income. *See* ECF 32-6 at 10-42. Although Plaintiffs may have originally intended to use the property as a residence, it is undisputedly a rental property. This takes them outside the scope of the UTPCPL. *In re Smith*, 866 F.2d 576, 583 (3d Cir. 1989) (holding that § 201-9.2 applies "only [to] those persons who purchase or lease goods or services primarily for consumer use rather than for commercial use"); *Conboy v. United States Small Bus. Admin.,* 992 F.3d 153, 157 (3d Cir. 2021) (holding that the UTPCPL did not provide a cause of action for a borrower seeking to purchase a commercial building).

As such, the statutory remedies provided by the UTPCPL, specifically treble damages and attorneys' fees, are not available to Plaintiffs, leaving them the common law remedy for breach of contract.

### B. Attorneys' Fees and Costs

Plaintiffs seek to recover all attorneys' fees related to this action. There is no lawful basis for this request because the UTPCPL does not apply, and attorneys' fee are not recoverable in a contract action unless the contract itself so provides. *Lucchino v. Commonwealth*, 809 A.2d 264, 267 (Pa. 2002); *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231 (Pa. 2024). Plaintiffs are therefore limited to reasonable costs and fees associated with their preparation and filing of the Motion for Default Judgment, as provided by my order. ECF 30 at 17-18.

Plaintiffs' counsel claims to have spent 13 hours working on this motion. *See* ECF 32 at ¶ 17(g). But the invoice provided only substantiates five hours – one hour on October 24, three hours on November 12, and one hour on December 7. ECF 32-2 at 15-17. Because I deem counsel's rate of $350 appropriate and the number of hours billed on the invoices reasonable, I will award Plaintiffs $1,750 in attorneys' fees. Plaintiffs will also be awarded the cost of delivering a courtesy copy of the Motion to Chambers, $16.25.

No further fees or costs are allowed by law.

### C. Compensatory Damages for Breach of Contract

Plaintiffs are entitled to damages for their breach of contract claim. In Pennsylvania breach of contract cases, a party can recover "whatever damages [it] suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably for[e]seeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." *Taylor v. Kaufhold*, 84 A.2d 347, 351 (Pa. 1951) (emphasis

4

omitted). Such damages can include lost profits. *AM/PM Franchise Ass'n v. Atl. Richfield Co.*, 584 A.2d 915, 920 (Pa. 1990) ("In addition to recognizing general damages [], Pennsylvania allows consequential damages in the form of lost profits to be recovered."). Punitive damages are not available. *DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 370 (Pa. Super. Ct. 2003).

Thus, Plaintiffs are entitled to all ordinary and reasonably foreseeable damages that they prove to a reasonable certainty. Plaintiffs seek $880,327.08 in compensatory damages. ECF 32 ¶ 27. Based on the submitted documentation, however, I conclude that Plaintiffs have proven damages of $480,533.41.

1. *Amount Paid to Defendants.*

First, Plaintiffs seek reimbursement for the amount they paid Defendants for work that was inadequately performed, totaling $353,077.32. ECF 32-3 at ¶ 8. Based on the record, I am persuaded that the work that Defendants performed was so wholly deficient that Plaintiffs received no benefit from it. After Plaintiffs paid Defendants over $350,000 for three years of work renovating the property, in May 2023 multiple City of Philadelphia inspectors found significant deficiencies, including that the fire rated insulation was "sloppy" and could not pass inspection, and that the electrical work was so subpar the supervisor inspector concluded that a previous inspector must have "been paid off." Compl. ¶¶ 22-26.[2] Upon the advice of the City's building inspectors, Plaintiffs hired a third-party engineering firm to inspect the condition of the renovated Property and make detailed recommendations. The resulting Structural Report identified over

---

[2] The City's reports from these inspections are attached to the Report of the Rule 26(f) Meeting submitted to this Court, and verify that the inspections failed due to numerous issues related to the renovation of the Property. *See* ECF 21-1. The Property's deficiencies go beyond what is listed in the inspection reports: an inspector specifically states that the problems are so numerous that he "cannot list everything." *Id*. at 5.

5

twenty significant issues, found that "the structural condition of the building is inadequate," and, based on the number and severity of issues, recommended that the best course of action was "a full demolition of the building to rebuild." Structural Report at 2-3, ECF 1-6. The findings and conclusions of that report were amply supported with photographs. Thus, damages for the full amount Plaintiffs paid Defendants to renovate the property are appropriate.

Defendants object to these damages on the basis that "Plaintiffs also supervised and paid others to perform work" on the property, and that the payments were not to Home Exchange. ECF 33. Incongruously, the only evidence they cite is Plaintiffs' exhibit of payment records. ECF 33-1. These records do not show payments to anyone *other* than Defendants, and the credit card charges all involve the purchase of building materials. Defendants do not point to any specific payment to another contractor. Nor do they supplement the record with any evidence about involvement by other contractors. These conclusory assertions do not rebut Plaintiffs' evidence.

Plaintiffs claim they paid Defendants $270,000 for labor and $83,069.32 for materials. ECF 32-3 at ¶¶ 9-10. Plaintiffs have submitted extensive documentation of these expenses. *See* ECF 32-4. Upon review of the submitted receipts, payments, and bank statements, I conclude that Plaintiffs have substantiated each claimed expense, except for the claimed $15,000 PayPal payment for labor dated October 24, 2022. Plaintiffs will therefore be awarded $255,000 for labor and the full $83,069.32 for materials.

    2. *Amount Paid to Substitute Contractor*

Plaintiffs also seek reimbursement for the $306,200 they paid to a replacement contractor, Sole Construction, to renovate the property after firing Defendants. ECF 32 at ¶ 5. Having received the value of this work, I can discern no basis on which Plaintiffs would be entitled to damages. For $306,200, Sole Construction turned a gutted property into a finished 3-unit building,

greatly increasing its value. If I were to award Plaintiffs such damages, it would be a windfall with them benefiting from an extensive renovation at no cost. By awarding Plaintiffs damages for the full amount paid to Defendants they are made whole.[3]

### 3. Lost Rent

Plaintiffs seek lost rent on the three units in the building from 2022 and 2023, totaling $120,000 for the 24 months. ECF 32-3 at ¶¶ 17-19. Plaintiffs and Defendants signed a contract for the renovation of the property in August 2020. Compl. Ex. A, ECF 1-3. Under the agreement, the property was to be completed in 6-12 months. *Id*. Defendants invoke the pandemic to argue that such a timeline was unrealistic, but the pandemic was already underway when they entered into the contract. Furthermore, Sole Construction was able to fully renovate the property within 8 months. *See* ECF 32-5. I therefore conclude that, had Defendants performed adequately and in a timely manner, the units would have been finished and rented out by January 2022. Defendants have advanced no argument that such a use was unforeseeable, and given the inherent value of property in many City neighborhoods such a use could be expected. Plaintiffs have submitted leases for all three units, demonstrating that they currently receive $1,600/month for two units, and $1,800/month for the third. *See* ECF 32-6 at 10-42. Because foreseeable lost profits are available for breach of contract, I will award Plaintiffs 24 months of lost rent, totaling $120,000.

### 4. ETrade Line of Credit Interest

Plaintiffs also seek as damages the interest they paid on their ETrade Line of Credit in 2021, 2022, and 2023, totaling $78,585.67. ECF 32-3 at ¶¶ 12-14. As of December 2021,

---

[3] Because I decline to award Plaintiffs damages for the amount they paid Sole Construction, Defendants' unrelated objections to these damages are moot. *See* ECF 33.

Plaintiffs' ETrade loan had a principal balance of $650,000. ECF 32-6 at 1. At that time, Plaintiffs had not paid Defendants the full amount, indicating that this significant line of credit was used for other purposes beyond paying Defendants – perhaps for the purchase of the property. In December 2022, the loan principal appears to drop to $300,000, and in December 2023 the loan principal rose again to $725,000. *See* ECF 32-6 at 4-8. Plaintiffs do not explain these transactions and fail to provide the Court with any clear basis with which to award damages solely for the excess interest purportedly caused by Defendants' breach. As such, the Court will deny Plaintiffs' request for ETrade Line of Credit interest damages.

       5. *Builders Trust Capital*

Plaintiffs also seek $22,464.09 interest on a $214,000 Builders Trust Capital loan they took out on August 3, 2022, after having run out of money. ECF 32-3 at ¶¶ 15-16; ECF 32-6 at 43. As of August 2022, Plaintiffs had paid Defendants over $308,000. ECF 32-3 at ¶¶ 9-10. According to the original agreement between Plaintiffs and Defendants, the total project cost should have been between $295,000 and $320,000. Compl. Ex. A, ECF 1-3. If the project had been completed properly and in a timely manner, I conclude that the units would have been finished and rented out by August 2022 with Plaintiffs receiving $5,000 per month in rental income. I am therefore persuaded that this additional line of credit was only taken out because of the project delays and cost overruns caused by Defendants, which forced Plaintiffs to find additional funds and hire another contractor at great expense. Thus, Plaintiffs are entitled to $22,464.09 in damages to cover the Builders Trust Capital loan interest.

In total, Plaintiffs are entitled to $480,533.41 in compensatory damages.

**D. Interest**

   *1. Pre-Judgment Interest*

Plaintiffs seek pre-judgment interest at a rate of 6% per annum from May 4, 2023 through the date of judgment. Under Pennsylvania law, pre-judgment interest is "awardable as of right" in contract cases. *Melley v. Pioneer Bank, N.A.*, 834 A.2d 1191, 1204 (Pa. Super. Ct. 2003); *see also Cmty. Coll. of Phila. v. Bannerworks, Inc.*, No. 21-3492, 2024 WL 329532, at *6 (E.D. Pa. Jan. 29, 2024) (Sanchez, C.J.). Pennsylvania law provides for pre-judgment interest calculated at a simple yearly rate of 6% from the date of the breach. 41 Pa. C.S. § 202. Plaintiffs seek pre-judgment interest from May 4, 2023 – the date of the final inspection with the City of Philadelphia that was wholly deficient. Based on the record, I believe that May 4, 2023 is the date of the breach.[4] Because the damages that had indisputably accrued at that time were (1) the amount paid to Defendants ($338,069.32) and (2) sixteen months of lost rent ($80,000), I will award Plaintiffs 6% pre-judgment interest on $418,069.32 from May 4, 2023 until February 18, 2025, for a total of $45,065.58.

   *2. Post-Judgment Interest*

I will also grant Plaintiffs' request for post-judgment interest. An award of post-judgment interest on awards in all civil cases is mandatory under 28 U.S.C. § 1961(a), and the applicable interest rate is set by the statute. I additionally note that post-judgment interest will be calculated based on the entire award, including pre-judgment interest, attorneys' fees, and costs. *See Eaves*

---

[4] Defendants object to Plaintiffs' request for pre-judgment interest, claiming that "the determination of an alleged obligation to Plaintiffs is to be determined as a matter of fact." ECF 33 at 3. The record amply supports my factual finding that Defendants breached their contract on May 4, 2023, when City inspectors found extreme deficiencies in the work, rendering it unsafe and the work done to that point worthless. *See* ECF 21-1; Compl. ¶¶ 22-26.

*v. Cnty. of Cape May*, 239 F.3d 527, 530 (3d Cir. 2001). Post-judgment interest shall accrue from the date the accompanying Order fixing the amount in damages is entered. *Id.* at 534.

### IV.    Conclusion

For the reasons set forth above, Plaintiffs are awarded $527,365.24, as well as post-judgment interest. An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge